### J. W. SWARTZ v. THE STATE OF OHIO.

1. WHAT IS NECESSARY TO CONSTITUTE MARRIAGE.

To constitute marriage, though it is not essential, that the statutory forms be complied with, it is essential when such forms are omitted, that each of the parties contract with the other that they will from the making of such contract, sustain to each other the relation of husband and wife so long as they both shall live and this must be followed by cohabitation.

2. EFFECT OF CONTINUOUS ACTS OF ADULTERY.

Adultery, however long continued, does not constitute marriage.

3. MAKING OF A VALID MARRIAGE CONTRACT.

Though the relations between persons of opposite sexes, may be illicit in their inception, yet this does not preclude the subsequent making of a valid marriage contract between them, without the statutory forms.

4. PROOF OF FORMER MARRIAGE.

To establish the former marriage of one on trial for bigamy where it is not claimed that such former marriage was in conformity with the statute, the same circumstances are admissible in evidence as are admissible to establish the same kind of a marriage in a civil case, and such circumstances may be sufficient to exclude all reasonable doubt.

MARVIN, J.

J. W. Swartz against the State of Ohio is a case which comes here upon a petition in error to reverse the judgment of the court of common. pleas.

Swartz was indicted by the grand jury of this county for the crime of bigamy, the charge being that he being at the time the husband of Henrietta McConnville Swartz, was on the 26th day of November, 1895, married to Kitty B. Stoner in this county. The indictment was under section 3081 of the Revised Statutes, which reads: "Whoever, having a husband or a wife, marries another, is guilty of bigamy."

That the marriage to Kitty B. Stoner was celebrated at the time charged is admitted and upon the trial before a jury in the court of common pleas, Swartz was found guilty of the crime charged in the indictment, the only question being whether, at the time of the last marriage, the woman Henrietta was his wife. There was no claim that he had ever been divorced from her, and she was living at the date of the marriage with Kitty, so that the real issue, the only issue was whether Swartz and Henrietta ever sustained to each other, the relation of husband and wife.

The evidence in the case clearly shows that for between nine and ten years the plaintiff in error and Henrietta McConnville Swartz lived and cohabited as though they were husband and wife; that they were recognized by all their acquaintances, recognized in the church, and in the stores where they traded, as husband and wife; that they were the parents of two children, both of whom took the name of Swartz, and were brought up and treated as the children of married persons, and by these people as their parents—their lawful parents. If there was ever a case where, in a criminal proceeding, it would do to say that the marriage was established by reputation and cohabitation, certainly, this is that case, provided there is not a difficulty to which I call attention, and that is this—that it is said and fairly shown that this relation between Swartz and Henrietta, when it began, was an illicit relation, and recognized by them as such. They made visits to several places together, where they treated one another as husband and wife, and yet under circumstances that show they did not then understand that they had made the contract by which they were to be husband and wife; but before very many months after their relations began, they became members of one household, and substantially for all the years afterward, which was something like nine years, they were members of one household, to all appearances sustaining to each other the relation of husband and wife.

Our attention is called to authorities to the effect that where the relations between man and woman at the beginning are illicit, they must be presumed to have continued to be thus until the contrary is shown; but here, every action of these people for nine years was consistent with their being husband and wife, and inconsistent with any other relation except upon the theory that they were voluntary adulterers during all this time and that being such adulterers, the children born in this adulterous relation, were treated by them both as their legitimate children, the son without objection on the part of the father, was christened with one of the father's christian names, the daughter, was christened with the name of his sister. Swartz effected insurance upon his life for the benefit of these two children. He registered twice at least as a voter, specifying that he was a married man, spoke of Henrietta uniformly as his wife, and never from about the time that she first became pregnant up to

about the time of his last marriage, does there seem to have been any-thing in his conduct inconsistent with his having entered into the marriage relations with Henrietta. The authorities are numrerous to the effect that in a civil action a marriage may be shown by reputation and continued cohabitation; and we think the court was right in saying to the jury that such relation might be shown in a criminal case by the same kind of evidence cautioning them as he carefully did that before they could find the accused guilty the evidence must be such as to exclude all reasonable doubt. Now that there may be the relation of husband and wife subsisting between parties where there has been no ceremony of marriage, is absolutely settled not only in very many other states but in this state as well. See the case of Cobb v. The R. R. Co. 35 S. page 94. Nobody makes a question here that Swartz may not have been the husband of Henrietta, though no marriage ceremony, such as is ordinarily recognized I mean, that which is provided for by the statute, has taken place. Among the authorities which have been examined is the case of Mary Eliza Hynes and others v. Kate McDermott et al., 91 N. Y., page 451. In the opinion in that case is a very elaborate discussion of the evidence necessary to establish the marriage relation. It has citations of so many authorities both in America and England, that it is an instructive case in this matter. It is true that that was a civil case, but it announces the evidence upon which the marrriage relation may be found. And remembering our criminal statute, that if one has a wife and marries another, he thereby commits the crime of bigamy, it seems to us if the evidence establishes beyond a reasonable doubt to the jury the contract which is necessary in order to constitute a marriage where there has been no ceremony of marriage as that is ordinarily understood, then the parties are to each other husband and wife. In 91 N. Y., the case to which I have referred, the relation between the parties commenced in adultery. They did not, at the outset of their cohabitation take one another for husbannd and wife. They went from England to Paris, in 1871. While they lived in England prior to their journey, they were living in adultery. The journey was an adulterous journey, and there was no evidence except that of reputation and continued cohabitation, that after they reached Paris, either in Paris or elsewhere after they left England, there was an agreement of marriage between them; but the court inferred thatthey promised each other while in Paris that they would be to each other husband and wife.

In the case of Andrew J. Yates against Sam Houston, 3 Texas, 433, a question was, whether one Tabitha Harris was the wife of John Jiams. Their cohabitation began in adultery when Jiams had a wife living. No proof except her long absence from her home and friends, was offered to show that this former wife was not living at the time of the trial, yet the court held that the presumption was that she was dead and that the continued cohabitation of Jiams and Tabitha, after such presumption of the death of the former wife, should be held to establish a marriage between them. Other authorities to the same effect are found as follows: 14 Encyclopedia of Law, 527 and 529; 52 Mich.. 464 and 467. In the case of the state of Minnesota against Elmer Worthington, 23 Minn., 528, this language is used in the syllabus: "The presumption that a cohabitation, illicit in its inception, remains such in charcter during its continuance, is one of fact for the jury and not one of law." In the same case at page 535 the court in its opinion make the following

quotation from Bishop's work on Marriage and Divorce. "Though the intercourse between the parent may have been admitted wrongful and illicit in its inception, because of some legal impediment of marriage, yet after its removal, slight circumstances may and ought in a doubtful case to be pressed into the service of showing that the parties have converted, what was at first unlawful, into a subsequent lawful union." The court instructed the jury carefully as to what was necessary in order to justify them in finding that the marriage relation existed between Swartz and Henrietta.

Special objection was made to the language of the court when he stated that the contract so made between the parties would be as valid in Ohio as though a chime of bells played a wedding march and half dozen bishops and clergymen assisted at the celebration before a thousand people; that neither a bishop nor a clergyman nor a civil magistrate need assist people in contracting marriage.

The court had preceded the statement complained of by defining a common law marriage as "a simple agreement between one man and one woman, who may lawfully so contract, that they will take one another as husband and wife thenceforth, and that they will sustain this relation thenceforth so long as they both shall live, with the mutual understanding that neither one nor both can rescind the contract or destroy relation, followed by cohabitation, when they do this, they are married." Then follows the sentence already mentioned, "And their marriage is just as valid, in Ohio, as though a chime of bells played a wedding march and half a dozen bishops and clergymen assisted at the celebration before a thousand people."

We think there was no error in this or any other portion of the charge, to the prejudice of the plaintiff in error. The definition of the common law marriage was a correct statement of the law in Ohio. The jury were carefully instructed that unless they found beyond a reasonable doubt that the relation of husband and wife existed between Swartz and Henrietta, they could not find him guilty. They were instructed that they might find him guilty without direct evidence of the contract having been entered into, but that unless they found from all the evidence that such contract had actually been entered into between them, they must find him not guilty. We think that under the evidence the jury might well find the defendant guilty of bigamy.

We affirm the judgment of the court below.

*Messrs. Heisley & Selzer*, for plaintiff in error.

*T. L. Strimple, Esq.*, for defendant in error.